

FILED

2011 Sep-21  AM 09:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| JOYCE MICHELLE HERSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:10-cv-1802-LSC |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The claimant, Joyce Michelle Herston ("Herston"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Herston timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Herston was forty years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has at least a high school education (Tr. at 149.) Her past work experience includes employment as a cashier, cook, hostess, nursery teacher, and department store sales clerk.  (*Id*. at 144.) Herston claims that she became disabled on December 31, 2005.[1] While the Court does not have the benefit of a brief detailing the sources of her disability, her alleged ailments appear to include osteoarthritis, degenerative disc disease, depression, anxiety, carpal tunnel syndrome, insomnia, fatigue, and a seizure disorder.  (*Id*. at 13, 14.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner

---

[1]In her original applications, Herston alleged that she became disabled on September 2, 2002. On August 6, 2009, she submitted a request to amend her disability onset date to December 31, 2005.(Tr. at 131.)

next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still

do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Herston meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2005. (Tr. at 13.) He further determined that Herston has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Herston's "osteoarthritis of the right foot and knees, degenerative disc disease of the lumbar spine, a depressive disorder not otherwise specified and an anxiety disorder" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, Appendix

1. (*Id*. at 15.) The ALJ determined that Herston has the residual functional capacity to perform light to sedentary work activities. (*Id*. at 17.)

The ALJ determined that Herston would not be able to perform her past relevant work. (*Id*. at 21.) However,  the ALJ found that the framework of the Medical-Vocational Rules directed a finding that she was not disabled. (*Id*. at 22.) After considering Herston's age, education, work experience, and residual functional capacity, the ALJ determined that she could perform several jobs that exist in significant numbers in the national economy. These include positions as a weight tester, bench hand, and rotor assembler, with 700, 670 and 800 positions in the regional economy, and 60,000, 50,000 and 70,000 in the national economy, respectively.  (*Id*. at 22-23.)  The ALJ concluded his findings by stating that Herston "has not been under a disability, as defined in the Social Security Act, from December31, 2005 through the date of this decision." (*Id*. at 20.)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Herston v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "[d]espite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the

reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Herston filed the instant action on July 2, 2010, asking for judicial review of the ALJ's decision.  (Doc. 1.)  However, the Court does not have the benefit of any brief, argument, list of authorities, or statement in support of her appeal. The complaint itself does not even point to any alleged errors of the ALJ. (*Id.*) Deadlines for submissions have now passed, and the issues in this case are ripe for decision.  Herston has still not presented anything beyond the complaint for this Court's consideration.

This Court, however, has found on its own the arguments which were made by Herston's attorney in a letter sent by fax to the Appeals Council (the "fax") seeking review of the ALJ's decision. (Tr. at 194-99.) The Appeals Council considered the fax, and "found that [it] does not provide a basis for changing the Administrative Law Judge's decision." (*Id.* at 2.) The Court has independently reviewed the arguments it contains, despite the

absence of any efforts on the part of Herston's attorney to bring them to this Court's attention.

The fax contains a total of eight arguments for overturning the ALJ's decision. First is a claim based on Herston's subsequent production of evidence that is allegedly "both new and material to the disposition of her claim." (*Id.* at 194.) In addition to disagreeing with Herston's characterization of this new evidence, the Appeals Council noted that much of this evidence relates to a later time period. (*Id.* at 2.) The Appeals Council then correctly noted that a new application, rather than appeal, is the proper vehicle for considering the presence of a disability after the date of the ALJ's decision.

The second argument is based on the ALJ's alleged "failure to find [that] the claimant's carpal tunnel syndrome was a severe impairment." (*Id.* at 195.) Herston argues that the ALJ should have found carpal tunnel syndrome to be a severe impairment in light of Dr. M. Clarke Woodfin's report. (*Id.* at 211-15.) The diagnosis of carpal tunnel syndrome in Dr. Woodfin's report, however, is simply the statement "CTS, right" in a list of impressions (*Id.* at 215) and a comment regarding her grip which appears to

have come from Herston herself rather than the opinion of the doctor. (*Id.*
at 213.)  Dr. Woodfin states on page 3 of his report that "any pain in this
examination, if present, is where noted below," and the following section
makes no mention of carpal tunnel syndrome or any pain in her right wrist.
(*Id.* at 213.)  Herston's upper extremities are described as "unremarkable"
in appearance, and her range of motion in the upper extremities is simply
described as "[f]ull." (*Id.* at 214.) The report goes on to add that Herston's
"[m]otor strength is 5/5 in the . . . wrist flexors, pinch, grip . . . without
apparent discomfort anywhere." (*Id.*) Far from overlooking or ignoring Dr.
Woodfin's opinion, the ALJ's assessment appears to be squarely based upon
it. The ALJ explicitly quoted Dr. Woodfin's observation that Herston's
"dexterity was also unaffected." (*Id.* at 14.) Herston's argument that the
ALJ disregarded Dr. Woodfin's evaluation is completely without merit.

    Herston's third argument is also a nonstarter.  She argues that the
ALJ's RFC finding that Herston "is limited to occasional gross handling,
reaching, and pushing and pulling with the upper extremeties" is at odds
with the functional assessment discussion which follows it. (*Id.* at 196.)
Herston claims there is a "clear conflict" between the ALJ's RFC and the

"discussion where the ALJ clearly finds greater limitation in the claimants use of her right dominant hand." (*Id.*) Yet the very next sentence of the RFC states that "[t]he claimant is limited to no pushing and pulling of the right extremities." (*Id.* at 17.)  There appears to be no conflict at all between the RFC and the ALJ's discussion of the considerations on which it is based, much less any "clear conflict."

Fourth is Herston's allegations regarding the ALJ's findings regarding her depression and anxiety. She first contends that the ALJ failed to "determin[e] the claimant's abilities to perform basic work activities." (*Id.* at 197.) Yet the ALJ did address this very question in light of Herston's depression and anxiety, and concluded that Herston is "limited to simple, repetitive tasks consistent with the requirements of unskilled work activities." (*Id.* at 21.) Herston also declares that "the ALJ's RFC assessment is deficient as a matter of law" because the ALJ "cited to the four factors" of the Psychiatric Review Technique ("PRT") in her RFC assessment. (*Id.* at 197.) Herston provides no legal support for the contention that such a citation is "deficient as a matter of law," and recent Eleventh Circuit case law holds to the contrary. *See Winschel v. Comm'r of Social Sec.*, 631 F .3d

1176, 1180 (11th Cir. 2011) ("Though the PRT and RFC evaluations are undeniably distinct . . . nothing precludes the ALJ from considering the results of the former in his determination of the latter."). The Court finds no error here.

The fifth argument states that "[w]hile the ALJ cited SSR 96-7p, he never actually explained how the standard was applied to the facts and circumstances of this case," (Tr. at 198),  and specifically protests "[t]he failure of the ALJ to articulate adequate reasons for discrediting pain testimony." (*Id*. at 199.)  The ALJ did, however, provide several reasons for his findings regarding credibility. The ALJ stated that "[g]reat weight has been given to the findings and opinions of Dr. Woodfin," whose remarks concerning Herston's pain, or the lack of it, are discussed above. (*Id*. at 21.) The ALJ also noted that "[t]hese findings and opinions of Dr. Woodfin are substantially consistent with the other substantive evidence of record." (*Id*.) The ALJ additionally relied upon Herston's own admissions at the hearing, as well as inconsistencies between Herston's testimony, her earlier statements, and other portions of the record. (*Id*. at 18, 20.) The very Social Security Ruling that Herston alleges that the ALJ neglected, SSR 96-7p,

specifically provides that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p at 5. There was ample support for the limited credibility that the ALJ placed on the subjective pain testimony.

Sixth is Herston's argument that "[g]iven the claimant's need to take frequent breaks, she cannot perform light work as found by the ALJ." (Tr. at 199.) She emphasizes that Herston "testified to having to take frequent naps throughout the day," and claims that "[t]he ALJ was required to address the claimant's need to take frequent breaks." (*Id.*) The ALJ did address it. She found that Herston's "statements concerning the . . . limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 18.) The Court has not found—and Herston has failed to point out—anything in the record supporting the need to take frequent breaks or naps, except her own assertions to that effect. Moreover, the ALJ also addressed the issue in her RFC, by finding that Herston "can stand and/or walk in combination for a total two hours with normal breaks," yet "requires

the need to alternate sitting and standing at will in the workplace." (*Id.* at

17.) This sixth argument fails as well.

Herston's penultimate argument is based on a misreading of SSR 96-8p.

Herston maintains that the ALJ  "failed to consider the Claimant's ability to

do work related activities on a regular and continuing  basis." (*Id.* at 199.)

Social Security Ruling 96-8p does provide in part that an ALJ:

> [M]ust discuss the individual's ability to perform
> sustained work activities in an ordinary work setting
> on a regular and continuing basis (i.e., 8 hours a day,
> for 5 days a week, or an equivalent work schedule),
> and describe the maximum amount of each
> work-related activity the individual can perform
> based on the evidence available in the case record.

SSR 96-8p at 7. This requirement does not, however, call for a

talismanic recitation of particular words; rather, it requires that an RFC be

made with an eye to compatibility with a regular and continuing work

schedule. *See id.* at 1 ("Ordinarily, RFC is an assessment of an individual's

ability to do sustained work-related physical and mental activities in a work

setting on a regular and continuing basis."). What matters is that the ALJ

make his or her determination in light of a regular work schedule rather

than, for example, part-time employment; not that a particular phrase like

"8 hours a day, 5 days a week" be used. *See* SSR 96-8p at 7 (approving also of using "an equivalent work schedule"); *see also Kelley v. Apfel*,185 F. 3d 1211, 1215 (11th Cir. 1999).  Here, as in *Kelley*, "the ALJ never found that [Herston] had the residual functional capacity to do only part-time work; rather, h[er] findings equated to a finding that [Herston] had the ability to do full-time [light to] sedentary work." 185 F. 3d at 1215. There is nothing hinting that the ALJ used an improper part-time standard. The ALJ found that Herston can "sit for a total of six hours" and can "stand and/or walk in combination for a total two hours." This alone would likely be sufficient. *See, e.g.*, *Rye v. Comm'r of Social Sec.*, 270 Fed. Appx. 938, 939-40 (11th Cir. 2008) ("[T]he ALJ found that Rye could sit for 'at least' four to six hours, and that he could stand and walk in fifteen minute increments for 'at least' two hours in a workday. The record supports this finding and supports the conclusion that Rye can perform work on a regular and continuing basis under the residual functional capacity test."). Even if a more explicit reference were required, the ALJ *did* specifically made reference to "an eight hour workday." (Tr. at 17.) The seventh argument is therefore unavailing.

The eighth and final argument is that "[t]he ALJ failed to properly consider the side effects of the claimant's medications." (*Id.* at 200.) In so arguing, Herston's attorney alleges that "the ALJ disregarded the complaints of the claimant as well as the opinion of the doctor." (*Id.* at 200.) It is not clear what "complaints of the claimant" are being referred to here, nor is a name given to "the doctor" whose opinion the ALJ supposedly disregarded. The fax of Herston's attorney states: "The claimant testified that the medication he [sic] was taking resulted in significant side effects such as drowsiness and sleepiness, groggy and drained in the mornings." (*Id.*) This statement appears to be unsubstantiated — there is no mention of any of these synonymous side effects in Herston's testimony. (Tr. At 29-78) The phrase "side effect" is not even once mentioned in the hearing transcript. (*Id.*) The closest thing in the record to supporting this contention appears to be a disability report which Herston completed, in which she lists the drugs she is currently taking along with any side effects. While four out of the seven drugs listed have "none" under side effects, one drug—Klonopin—has a side-effect listing of "drowsiness." (*Id.* at 148.) This is contradicted, however, by another disability report from Herston which

also lists Klonopin. (*Id.* at 184.)  In this second report, under the column captioned "Side Effects You Have," Herston's response for Klonopin—and for all the other drugs listed—is "no effect." Coupled with the use of the masculine pronoun "he" when referring to Ms. Herston in this section, the side-effects argument appears to have been cut and pasted without regard for its applicability in this case. In any event, it is an unfounded allegation. The ALJ did address Herston's prescription medications in her findings (*Id.* at 15, 16, 21), but there was nothing in the record before the ALJ which would have warranted a discussion on such side effects. To the extent that the ALJ "disregarded" Herston's own statement in the disability report, her reasons for doing so appear to be supported by the record, as explained above in the section dealing with credibility. This argument, like the others, is without merit.

While the Court has endeavored to ascertain Herston's arguments from her attorney's arguments,  the Court has also conducted a searching review of the ALJ's opinion and the entire evidentiary record. Based upon that evaluation, this Court concludes that the ALJ's decision applies the proper legal standards and is supported by substantial evidence. The ALJ did not err

when he concluded that Herston is not disabled.

IV.    Conclusion.

Because the Court finds that the Commissioner's final decision applies

the proper legal standards and is supported by substantial evidence, the

decision of the Commissioner of the Social Security Administration will be

affirmed by separate order.

Done this 21<u>st</u> day of <u>September 2011</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167037